**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| FARDAD SABETPOUR, | : | |
| | : | |
| Plaintiff, | : | Civ. No. 19-10030 (KM) (MAH) |
| | : | |
| v. | : | |
| | : | |
| DEBORAH MARTINEZ a/ka DEBORAH | : | |
| L. PLAZA, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**KEVIN MCNULTY, U.S.D.J.**

**I.      INTRODUCTION**

Plaintiff, Fardad Sabetpour ("Plaintiff" or "Mr. Sabetpour"), was formerly detained at the Essex County Correctional Facility ("ECCF") in Newark, New Jersey. He has filed a 145-page civil rights complaint that names dozens of Defendants and raises numerous claims. (*See* DE 1). Plaintiff was previously granted *in forma pauperis* status. (*See* DE 2).

At this time, this Court must screen the allegations of Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or whether the allegations seek monetary relief from a defendant who is immune from suit. For the following reasons, the complaint shall proceed in part.

**II.      LEGAL STANDARD**

Under the Prison Litigation Reform Act, Pub.L. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (Apr. 26, 1996) ("PLRA"), district courts must review complaints in those civil actions in which a plaintiff is proceeding *in forma pauperis. See* 28 U.S.C. § 1915(e)(2)(B). The PLRA directs district courts to *sua sponte* dismiss any claim that is frivolous, is malicious, fails

to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

"The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), as explicated by the United States Court of Appeals for the Third Circuit. To survive the court's screening for failure to state a claim, the complaint must allege 'sufficient factual matter' to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, *"pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the

> District of Columbia, subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other proper
> proceeding for redress, except that in any action brought against a
> judicial officer for an act or omission taken in such officer's
> judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was
> unavailable.

Thus, to state a claim for relief under § 1983, a plaintiff must allege first, the violation of a right

secured by the Constitution or laws of the United States, and second, that the alleged deprivation

was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp.*

*Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted); *see also West v. Atkins*, 487

U.S. 42, 48 (1988).

## III.    FACTUAL BACKGROUND & DISCUSSION OF CLAIMS

The factual allegations of the complaint shall be taken as true for purposes of this

screening opinion only. The named Defendants are:

1. Deborah Martinez a/k/a Deborah Plaza (hereinafter "Martinez/Plaza")
2. Saywonza Cuevas
3. Virginia Dudley
4. Captain Pulitano
5. Lieutenant Cornelius
6. Essex County
7. Ann Sorrel
8. CFG Health Systems, LLC
9. Begonia Joseph
10. Santell Charles
11. Sergeant Slaide
12. Officer Mellito
13. Sergeant Crawford
14. Officer Cassidy
15. Officer Da Byrd
16. Officer R. Lewis
17. Sergeant Novak
18. Paula Sanders
19. Sved Rizvi

20. Paul O'Connor
21. Saladin Abdunafi
22. Meia Perkins
23. Lionel Anicette
24. Les Pachall
25. Alfaro Ortiz Jr.
26. Tiffany Wilson
27. Officer Bivona
28. Sergeant Ferrara
29. Joseph Divincenzo Jr.
30. Charles Green

Plaintiff notes the following causes of action:

1. Court Access I – against Martinez/Plaza, Cuevas, Dudley, Ortiz & Sorrel
2. Failure to Protect – against Mellito, Crawford & Slaide
3. Deliberate Indifference to Medical Needs – against CFG Health Systems, Perkins, Sanders, Rizvi, O'Connor, Abdunafi, Anicette, Joseph, Charles, Martinez/Plaza, Dudley, Slaide, Novak, Cassidy, Da Byrd, Lewis & Wilson
4. Equal Protection – against Martinez/Plaza, Pulitano, Cornelius, Sorrel, Green, Bivona & Ferrara
5. Retaliation – against Martinez/Plaza, Pulitano, Cornelius, Sorrel, Cuevas, Dudley, Anicette, Ortiz Jr., Wilson, Bivona, Ferrara, Green, Rizvi, O'Connor, Perkins, Abdunafi & Sanders
6. Supervisor Liability – against Cuevas, Dudley, Pulitano, Cornelius, Slaide, Crawford, Anicette, Paschall, Ortiz Jr., Wilson, Ferrara, Divincenzo Jr. & Green
7. Court Access II – against Martinez/Plaza, Cuevas, Dudley, Pulitano, Cornelius, Sorrel, Ortiz Jr. & Green
8. Unreasonable Search and Seizure – against Green, Bivona, Ferrara, Sorrel
9. Legal Malpractice – against Sorrel
10. Tort Action – against Martinez/Plaza, Slaide, Cassidy, Da Byrd, Lewis & Novak

Additionally, recognizing the need to liberally construe *pro se* pleadings, I have incorporated into the discussion certain other potential claims that are suggested by the allegations.

A. Deborah Martinez/Plaza

1. *Factual Allegations*

Martinez/Plaza is employed in the "Ombudsman's Office" at ECCF. (*See* DE 1 at 2). She allegedly impeded, impaired, or frustrated Plaintiff's access to the courts. (*See id.* at 3). This

resulted in the termination of a notice of removal based on noncompliance with an unspecified

technical requirement. (*See id.* at 4). Plaintiff alleges that Martinez/Plaza also refused to provide

him legal materials such as "packets, law books, manila envelopes, certified mail services,

folders, print paper, notebooks, pens, physical copies of grievances and requests, medical

records[.]" (*Id.* at 6). Additionally, Martinez/Plaza failed to provide him a "notice of claim"

form, thus denying him legal assistance or materials necessary to commencement of a lawsuit.

(*See id.* at 4). That lawsuit would have involved a claim of assault that occurred on November

17, 2015. (*See id.* at 4-5). Plaintiff's family called Martinez/Plaza's supervisor, Defendant

Virginia Dudley, to resolve these issues. Nevertheless, issues remained unresolved. (*See id.*).

Plaintiff also alleges Martinez/Plaza retaliated against him in the following ways:

a)  Not allowing Plaintiff into her office after he asked her for court access legal materials
    and to make a legal call. (*See id.* at 6-7).

b)  Not receiving legal assistance

c)  Tampering with grievances

d)  Unreasonable restrictions for law library access (Plaintiff states he made this known to
    Warden Green through several letters.) (*See id.* at 13).

e)  Firing Plaintiff from his role as legal representative on the cell block. (*See id.* at 18).

f)  Failing to provide Plaintiff with a notary. (*See id.* at 15).

Plaintiff also states Martinez/Plaza infringed his property rights. Plaintiff states that half

of his legal and personal property was thrown away when he was transferred to another facility

in October and November 2017. (*See id.* at 13-14).

Plaintiff further alludes to Martinez/Plaza's "class-based discrimination." She

purportedly acted with deliberate indifference by depriving Plaintiff of health and safety. (*See id.*

at 17). Plaintiff also alleges that Martinez/Plaza deprived him of equal protection when she deprived him of "legal supplies, notary, legal calls for attorney/client and case investigative matters, privacy to discuss legal issues with attorney, right to proceed pro se [and to] retrieve medical records." (*See id.* at 19).

In refusing Plaintiff legal assistance and denying him help in providing medical records, Martinez/Plaza purportedly engaged in a custom, policy, or practice of committing constitutional violations against him. (*See id.* at 19).

Finally, Martinez/Plaza purportedly delayed and or denied Plaintiff's access to information regarding grievances and available remedies on several occasions in 2018. (*See id.* at 20).

2. *Discussion*

Plaintiff's allegations against Martinez/Plaza suggest five possible federal claims: (1) access to courts; (2) retaliation; (3) loss of property; (4) equal protection; and (5) deliberate indifference to a serious medical need. For the reasons discussed *infra*, only Plaintiff's federal retaliation claim shall proceed.

i.    Access to Courts

"Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343 (1996)). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other" remedy that may be awarded as recompense "for the lost claim other than in the present denial of access suit." *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403, 415, (2002)). Thus, to

satisfy the requisite pleading requirements, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Id.* at 205–06 (citing *Christopher*, 536 U.S. at 416–17) (footnote omitted). Indeed, in the context of alleging the underlying claim that the plaintiff was prevented from pursuing, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued[.]" *Christopher*, 536 U.S. at 417 (footnote omitted).

Plaintiff fails to adequately plead an access to courts claim against Martinez/Plaza. Even assuming that he was obstructed from asserting some legal claim, he fails to allege any specifics from which the Court could conclude that this claim had any validity. *See, e.g.*, *Drake v. Muniak*, No. 13-3868, 2015 WL 2169875, at *8 (D.N.J. May 7, 2015) (plaintiff's lack of law library access fails to state access to courts claim where plaintiff fails to adequately describe any underlying claim he was prevented from raising).

An additional barrier to this claim is the two-year statute of limitations for § 1983 claims. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013) (adopting New Jersey statute, citing *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010)). That period starts running from the date of accrual, which is determined by federal law. *See Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Genty v. Resolution Trust. Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)). "Under federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Id.* (internal quotation marks and citations omitted). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 120 (1979)).

Plaintiff asserts that Martinez/Plaza prevented his access to courts on several occasions. For example, he asserts that Martinez/Plaza, by denying access to certain forms, prevented him from filing suit for an assault in 2015. I am skeptical that a single ombudsman could have prevented Plaintiff from obtaining court forms. But even if this Court were to assume *arguendo* that Martinez/Plaza's actions in 2015 prevented Plaintiff from accessing the courts, the claim would have presumably accrued in 2015. Plaintiff filed his complaint in this action, however, in April 2019, well beyond the two-year statutory limit. Thus, this claim, unless the limitations period is tolled, is time-barred on its face.

 "'State law, unless inconsistent with federal law, also governs the concomitant issue of whether a limitations period should be tolled.'" *McPherson v. United States*, 392 F. App'x 938, 944 (3d Cir. 2010) (quoting *Dique*, 603 F.3d at 185). New Jersey sets forth certain bases for statutory tolling. *See, e.g.*, N.J. Stat. Ann. § 2A: 14-21 (detailing tolling because of minority or insanity); N.J. Stat. Ann. § 2A: 14-22 (detailing tolling because of non-residency of persons liable). The complaint as pled does not allege any basis for statutory tolling.

Additionally, New Jersey "permits equitable tolling where 'the complainant has been induced or tricked by his adversary's misconduct into allowing the deadline to pass,' or where a plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum." *Cason v. Arie Street Police Dep't*, No. 10-0497, 2010 WL 2674399, at *5 n.4 (D.N.J. June 29, 2010) (citing *Freeman v. State*, 347 N.J. Super. 11, 31 (N.J. Sup. Ct. App. Div. 2002)). The complaint though contains no allegations that would support such drastic tolling of the statute of limitations. Even assuming that Plaintiff lacked access to certain forms in 2015, that

would not excuse his failure to act until 2019. Nor does he explain how he became able to file a federal lawsuit in 2019, when he could not have done so before.

It is apparent from the face of the complaint that Plaintiff's access-to-courts claim against Martinez/Plaza must be dismissed. Any supervisory liability or conspiracy liability claims stand or fall with the underlying access-to-courts claim against Martinez/Plaza. Because no underlying constitutional violation is pled, supervisors and others cannot be held derivatively liable. *See Talley v. Varner*, 786 F. App'x 326, 329 (3d Cir. 2019) ("Talley's claims of supervisory liability and conspiracy fail because, as noted by the District Court, there is no underlying constitutional violation.") (citations omitted).

      ii.    Retaliation

> "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal connection between the exercise of his constitutional rights and the adverse action taken against him."

*Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). With respect to the third element, a plaintiff must allege that the constitutionally protected conduct was a substantial or motivating factor for the adverse action. *See Velasquez v. Diguglielmo*, 516 F. App'x 91, 95 (3d Cir. 2013) (citations omitted). Such causal connection allegations usually fall into one of two categories, although the court will also consider them in their totality:

> To establish the requisite causal connection for a retaliation claim predicated on the First Amendment, the plaintiff (here, a prisoner) usually has to prove one of two things: (1) an unusually suggestive time proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). If neither of these

> showings is made, then the plaintiff must show that, from the
> evidence in the record as a whole, the trier of fact should infer
> causation." *Id.*

*DeFranco v. Wolfe*, 387 F. App'x 147, 154 (3d Cir. 2010). While temporal proximity is relevant

to retaliation, *see Ambrose v. Twp. of Robinson, Pa.*, 303 F.3d 488, 494 (3d Cir. 2002), "'[t]he

mere passage of time is not legally conclusive proof against retaliation,'" *Marra v. Phila.*

*Housing Auth.*, 497 F.3d 286, 302 (3d Cir, 2007) (quoting *Robinson v. Southeastern Pa. Transp.*

*Auth*, 982 F.2d 892, 894 (3d Cir. 1993)) (other citation omitted).

Plaintiff has sufficiently stated a retaliation claim against Martinez/Plaza. Plaintiff alludes

to prison grievances as well as a lawsuit he filed against Martinez/Plaza. These actions constitute

constitutionally protected conduct. *See Laurensau v. Romarowics*, 528 F. App'x 136, 139 (3d

Cir. 2013) (citing *Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981); *Rauser v. Horn*,

241 F.3d 330, 333 (3d Cir. 2001)).

As an act of retaliation, Plaintiff alleges that Martinez/Plaza was involved in firing

Plaintiff from his role as "legal representative." That in and of itself is not a constitutional

violation but may be relevant as an act of retaliation.[1] In addition, Plaintiff alleges that Captain

---

[1]       Inmates do not have a constitutional right to act as legal
representatives for other inmates. *See Smith v. Maschner,* 899 F.2d
940, 950 (10th Cir.1990) (stating a jailhouse lawyer does not have
a protected interest in providing legal representation to other
inmates); *Thaddeus–X v. Blatter,* 175 F.3d 378, 396, (citing *Gibbs
v. Hopkins,* 10 F.3d 373, 378 (6th Cir.1993) (stating a " 'jailhouse
lawyer's' right to assist another prisoner is wholly derivative of that
prisoner's right of access to the courts; prison officials may
prohibit or limit jailhouse lawyering unless doing so interferes with
an inmate's ability to present his grievances to a court"); *Beese v.
Todd,* 35 Fed. Appx. 241 (7th Cir.2002) (stating prisoners have no
constitutional right to provide legal assistance to other prisoners).

*Neal v. Stouffer*, No. 12-524, 2013 WL 693036, at *6 (D. Md. Feb. 25, 2013) (footnote omitted).
However, Plaintiff is not asserting his right to be a jailhouse lawyer as a his constitutionally
protected activity. Instead, he is asserting his *removal* as a jailhouse lawyer was a retaliatory act.

Pulitano ordered Plaintiff to be fired from this position (legal representative), and also barred

him from holding any prison job because of a pending lawsuit he had against Martinez/Plaza.

Being fired from or preventing Plaintiff from having any prison job did not necessarily, but

could, constitute an adverse retaliatory action. *See Pepe v. Lamas*, 679 F. App'x 173, 175 (3d

Cir. 2017); *Mack*, 427 F. Appx. at 72–73. Finally, Plaintiff has sufficiently alleged a causal

connection given that he has alleged that the justification was explicitly retaliatory.

These allegations are sufficient to survive initial screening. Plaintiff's retaliation claim

against Martinez/Plaza will be permitted to proceed.

iii.   Loss of Property

An unauthorized deprivation of property by a state actor, whether
intentional or negligent, does not constitute a violation of the
procedural requirements of the Due Process Clause of the
Fourteenth Amendment if a meaningful post-deprivation remedy
for the loss is available. *Hudson v. Palmer*, 468 U.S. 517, 530–36
(1984); *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981), *overruled
in part on other grounds, Daniels v. Williams*, 474 U.S. 327, 328
(1986). In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–36
(1982), the Supreme Court explained, however, that post-
deprivation remedies do not satisfy the Due Process Clause if the
deprivation of property is accomplished pursuant to established
state procedure rather than through random, unauthorized action.

*Stokes v. Lanigan*, No. 12–1478, 2012 WL 4662487, at *4 (D.N.J. Oct. 2, 2012). New Jersey

provides a post-deprivation remedy for unauthorized deprivation of property by public

employees through the New Jersey Tort Claims Act, N.J. Stat. Ann. § 59:1–1, *et seq.* Because a

meaningful post-deprivation remedy is available, Plaintiff fails to state a federal constitutional

due process claim with respect to the purported taking of his property. Therefore, to the extent

Plaintiff is seeking to assert such a claim under the Federal Constitution, he fails to state a claim

upon which relief may be granted.

iv.     Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). Thus, to state a claim under the Equal Protection Clause, a plaintiff must allege that: (1) he is a member of a protected class; and (b) he was treated differently from similarly situated inmates. *See id.* Where the plaintiff does not claim membership in a protected class, he must allege arbitrary and intentional discrimination to state an equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Specifically, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). Prison inmates as such are not a protected class. *See Abdul–Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a suspect classification).

Plaintiff's complaint fails to state a claim under either equal protection theory against Martinez/Plaza. Plaintiff may be attempting to allege protected status based upon his being a Moorish American National. Even assuming that this is a recognized ethnic group, Plaintiff's allegations that he was treated differently than similarly situated individuals are conclusory and therefore insufficient to properly state an equal protection claim. *See Lasche v. New Jersey*, No. 18-17552, 2020 WL 2989145, at *5 (D.N.J. June 4, 2020) (citing *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir 2005) (other citations omitted) (absent supporting factual allegations, court not required to accept conclusory allegations that others are treated dissimilar

from plaintiff). Accordingly, Plaintiff's equal protection claim against Martinez/Plaza is

dismissed without prejudice for failure to state a claim upon which relief may be granted.[2]

      v.     Medical Care

Because Plaintiff was a pretrial detainee while housed at ECCF, his claim of deliberate

indifference to his medical needs is analyzed under the Fourteenth Amendment. *See Tapp v.*

*Brazill*, 645 F. App'x 141, 145 n.4 (3d Cir. 2016). Nevertheless, the Eighth Amendment's

"deliberate indifference" standard provides a guide to what, at a minimum, is owed to pretrial

detainees. *See id.* (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir.

2003)).

> For the delay or denial of medical care to rise to a violation of the
> Eighth Amendment's prohibition against cruel and unusual
> punishment, a prisoner must demonstrate "(1) that defendants were
> deliberately indifferent to [his] medical needs and (2) that those
> needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.
> 1999). Deliberate indifference requires proof that the official
> "knows of and disregards an excessive risk to inmate health or
> safety." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582
> (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837
> (1994)). We have found deliberate indifference where a prison
> official: "(1) knows of a prisoner's need for medical treatment but
> intentionally refuses to provide it; (2) delays necessary medical
> treatment based on a nonmedical reason; or (3) prevents a prisoner
> from receiving needed or recommended treatment." *Rouse*, 182
> F.3d at 197. Deference is given to prison medical authorities in the
> diagnosis and treatment of patients, and courts "disavow any
> attempt to second-guess the propriety or adequacy of a particular
> course of treatment ... (which) remains a question of sound
> professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*,
> 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin*, 551
> F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or
> medical malpractice do not trigger constitutional protections.
> *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

---

[2]  To the extent Plaintiff is attempting to assert some type of supervisory liability claim arising
from his equal protection allegations against Martinez/Plaza, it too fails to state a claim because
Plaintiff failed to allege an underlying equal protection violation. *See Talley*, 786 F. App'x at
329.

*Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent,* 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987))).

Plaintiff fails to state with any facial plausibility that Martinez/Plaza was deliberately indifferent to his serious medical needs. His allegations related to his need for medical care are conclusory and non-factual as to Defendant Martinez/Plaza specifically. (*But see* discussion as to other defendants, *infra.*) Accordingly, this claim is dismissed without prejudice for failure to state a claim.

B. Saywonza Cuevas & Virginia Dudley

1. *Factual allegations*

Cuevas oversees all "Social Services" grievances at ECCF. (*See* DE 1 at 20). Plaintiff states that Cuevas is liable under a theory of "supervisor liability" for failing to remedy the wrongful acts of Plaza/Martinez. (*See id.*). According to Plaintiff, Cuevas failed to address his grievances properly. (*See id.* at 21). Plaintiff alleges Cuevas failed to inquire into essential facts in responding to several of them. (*See id.* at 21-22). Plaintiff also alludes to Martinez/Plaza tampering with his grievances and alleges that Cuevas conspired to cover up acts which denied him administrative remedies and court access. (*See id.* at 22-23).

Virginia Dudley is Director of Social Services at ECCF. (*See id.* at 23). According to Plaintiff, she failed to address Plaintiff's complaints about Martinez/Plaza. Plaintiff states Dudley was warned about Martinez/Plaza's hostile attitude toward him and was fully aware of Plaintiff's need for legal assistance, a notary, supplies, legal calls, and privacy. (*See id.* at 24). Plaintiff states he met with Dudley on July 24, 2018 to retrieve medical records, but "she only provided those grievances that she picked and chose to provide and did not help provide medical records or legal assistance." (*See id.* at 24-25). Dudley also purportedly had knowledge of the "failed legal assistance program at ECCF." (*See id.*). Dudley allegedly failed to discipline her subordinates, including Martinez/Plaza. (*See id.* at 26). Dudley, along with Martinez/Plaza and Cuevas, allegedly conspired to "cover up" acts to deny Plaintiff administrative remedies. (*See id.* at 27).

Plaintiff states that these two Defendants are liable for the following:

> conspiracy to deprive Plaintiff "due process to injure secured right to be free from "retaliatory conduct", to be free from "unreasonable restrictions", from "knowingly" and "intentionally" failure to provide crucial for redress to "deter" Plaintiff from pursuing civil action and/or "excessive delays" and/or "unreasonable" denials to provide Plaintiff with physical copies of grievances, requests, medical records, and account information in their control, authority and possession, and did so [on various dates listed throughout 2018 and early 2019] and continue till the present day.

(*Id.* at 27-28).

2. *Discussion*

I interpret the complaint as asserting three potential claims against these two Defendants: (1) failure to adequately respond to grievances; (2) conspiracy; and (3) supervisory liability. For the reasons described *infra*, none of Plaintiff's claims against Cuevas and Dudley shall proceed.

i.  Grievances

Prisoners do not have a constitutionally protected right to a prison grievance process. *Heleva v. Kramer*, 214 F. App'x 244, 247 (3d Cir. 2007); *Burnside v. Moser*, 138 F. App'x 414, 416 (3d Cir. 2005). While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Thus, any attempt by Plaintiff to establish liability against the Defendants based upon their handling of his administrative grievances or complaints does not support a constitutional claim. *See Stringer v. Bureau of Prisons*, 145 F. App'x 751, 753 (3d Cir. 2005) (a failure to respond to an inmate's grievances "does not violate his rights to due process and is not actionable") (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)); *Alexander v. Gennarini*, 144 F. App'x 924, 925 (3d Cir. 2005) (involvement in post-incident grievance process not a basis for § 1983 liability); *Wilson v. Horn*, 971 F. Supp. 943, 947 (E.D. Pa. 1997), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (prison officials' failure to respond to inmate's grievance does not state a constitutional claim).

*Belt v. Fed. Bureau of Prisons*, 336 F. Supp. 3d 428, 436 (D.N.J. 2018). Thus, any purported

deficiencies in these Defendants' response to Plaintiff's grievances, in and of themselves, are

insufficient to state a claim:

"[P]rison officials cannot be held liable based solely on their failure to take corrective action when grievances or investigations were referred to them." *Miller v. Trometter,* No. 11–0811, 2012 WL 5933015, at *13 (M.D. Pa. Nov.27, 2012) (citing *Pressley v. Beard,* 266 F. App'x 216 (3d Cir. 2008) (per curiam); *Hughes v. Smith,* 237 F. App'x 756, 758 (3d Cir. 2007) (per curiam)) (other citations omitted); *Robinson v. Green,* No. 12–1212, 2012 WL 5401079, at *3 (E.D. Pa. Nov.5, 2012); *Mercado v. Ellis,* No. 11–6756, 2012 WL 1636164, at *3 (D.N.J. May 9, 2012) ("It appears that Plaintiff's only claims against the named defendants are based on their failure to investigate or respond to Plaintiff's letters and grievances. These claims fail to rise to the level of a constitutional deprivation sufficient to state a claim under § 1983. Indeed, an allegation of a failure to investigate, without another recognizable

> constitutional right, is not sufficient to sustain a section 1983
> claim.") (internal quotation marks and citations omitted).

*McKinney v. Prosecutor's Off.*, No. 13-2553, 2014 WL 2574414, at *9 (D.N.J. June 4, 2014).

Accordingly, the grievance-related claims against these two Defendants fail to state a claim and will not go forward.[3]

        ii.  Conspiracy

To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive plaintiff of a constitutional right under color of law. *See Parkway Garage, Inc. v. City of Phila.*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir.2003). A conspiracy claim under § 1983 requires a "meeting of the minds," and to survive the Rule 12(b)(6) standard, a plaintiff must provide some plausible factual basis for an inference of agreement and concerted action. *See Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).

Plaintiff's allegations against Defendants Cuevas and Dudley offer only labels and conclusions, not facts. Plaintiff did have a federally protected right to file grievances and access the courts free from retaliation. He fails to allege any facial plausibility how Cuevas and Dudley acted in concert with each other or with Martinez/Plaza with respect to Martinez/Plaza's alleged retaliation. And, as previously stated, he otherwise fails to assert an underlying claim for which these defendants, via conspiracy, could be held liable. *See Talley*, 786 F. App'x at 329.

---

[3]  And, as noted above, to the extent plaintiff attempts to hold Cuevas and Dudley secondarily liable for the acts of Martinez/Plaza, the claims fail for lack of any primary claim against Martinez/Plaza.

Accordingly, Plaintiff's conspiracy claim against Cuevas and Dudley is dismissed without prejudice for failure to state a claim upon which relief may be granted.

### iii.  Supervisory Liability

Supervisory liability requires a level of culpable personal involvement in the wrongdoing of a subordinate. "Allegations of participation or actual knowledge and acquiescence...must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Generally, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. Of Social Servs.*, 436 U.S. 658, 691 (1978). In *Iqbal*, the Supreme Court held that "[b]ecause vicarious or supervisor liability is inapplicable to...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." 556 U.S. at 676..

> With respect to supervisors, the United States Court of Appeals for the Third Circuit has recognized that "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted).

*Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). More specifically, to establish supervisory liability, a plaintiff must show: "(1) the existence of a policy or practice that created an unreasonable risk of a [constitutional] violation; (2) the supervisor's awareness of the creation of the risk; (3) the supervisor's indifference to the risk; and (4) that the plaintiff's injury resulted from this policy or practice." *Thorpe v. Little*, 804 F. Supp. 2d 174, 184 (D. Del. 2011) (citing

*Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Put another way, supervisory liability "may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or if the supervisor's actions and inactions were 'the moving force' behind the harm suffered by the plaintiff." *Jackson v. Taylor*, No. 05-823, 2006 WL 2347429, at *2 (D. Del. 2006).

Plaintiff pleads nothing but labels and conclusions that Cuevas and Dudley created a policy, custom and/or practice of improperly supervising subordinates which led to constitutional harm. No facts are proffered. This is insufficient to state a supervisory claim against them.

Plaintiff does plead some specifics with respect to Dudley regarding her failure to provide Plaintiff with copies of his medical records or grievances. This allegation appears to be relevant to the access-to-courts claim. As previously noted, however, Plaintiff has failed to allege with the requisite clarity the nature of a viable underlying claim that he was prevented from asserting. So, the access-to-courts claim, whether asserted directly or on a supervisory liability basis, must be dismissed.

Accordingly, Plaintiff's supervisory liability claims against these Defendants Cuevas and Dudley are dismissed without prejudice for failure to state a claim upon which relief may be granted.

C. <u>Captain Pulitano</u>

1. *Factual Allegations*

Captain Pulitano works at ECCF and is alleged to oversee all administrative grievances and appeals. (*See* DE at 28). Pulitano has purportedly failed to remedy the actions of Martinez/Plaza and medical staff that have caused Plaintiff constitutional injuries. (*See id.* at 29). Pulitano also allegedly retaliated against Plaintiff when he deterred Plaintiff from pursuing a

lawsuit or filing grievances for threats he received, interfered with his medical care, terminated Plaintiff from jobs or programs, and permitted an ongoing pattern of harassment. (*See id.* at 30-31). Pulitano also allegedly threatened Plaintiff with disciplinary charges on a discriminatory basis, and invoked Plaintiff's nationality and religious faith to verbally abuse and discriminate against him. (*See id.* at 33).

Plaintiff states that he warned Pulitano about Martinez/Plaza and that Pulitano was fully aware of Plaintiff's grievances, but failed to do anything. (*See id.* at 34-35). Plaintiff states that Pulitano ordered him to be fired from his position as legal representative of his prison unit. (*See id.* at 36). Pulitano also purportedly limited the grievance procedure to once per month. (*See id.*). Pulitano conspired with Cornelius by stating Plaintiff was the "poster child" for filing grievances. (*See id.* at 37). Pulitano purportedly failed to give adequate responses to Plaintiff's grievances. (*See id.* at 39).

Plaintiff states that he personally complained to Pulitano on February 12, 2019, about the lack of access to the law library, having no legal assistance, his health problems, and the actions of Martinez/Plaza. (*See id.* at 40-41). He claims Pulitano promised Plaintiff that if he stopped filing grievances, he would investigate "everything and resolve all the issues." (*See id.* at 41). According to Plaintiff, he and Pulitano came to an agreement then that he would investigate Plaintiff's issues; however, Pulitano failed to remedy these issues. (*See id.*).

Plaintiff further states Pulitano is liable to him for the excessive delays he faced in resolving his medical needs. (*See id.* at 42).

## 2. Discussion

Plaintiff brings the following claims against Pulitano: (1) court access; (2) retaliation; (3) equal protection; (4) conspiracy; and (5) deliberate indifference to Plaintiff's serious medical

needs. For the reasons discussed *infra*, this Court will permit Plaintiff's retaliation claim against Pulitano to proceed past screening, but dismiss the rest.[4]

      i.   Court Access

Plaintiff's fails to state an access-to-courts claim against Pulitano for the same reasons discussed with respect to Martinez/Plaza. That is, Plaintiff has failed to plead a viable underlying claim that he was prevented from pursuing. *See Talley*, 786 F. App'x at 329.

      ii.   Retaliation

Plaintiff's claim for retaliation against Pulitano shall be permitted to proceed for reasons like those discussed above with respect to Martinez/Plaza.

      iii.   Equal Protection

Plaintiff argues Pulitano was "discriminatory" against Plaintiff when he threatened him with disciplinary charges and verbally abused him for his religious faith and nationality. "[A]llegations of verbal abuse or threats, absent any injury or damage, are not cognizable under § 1983." *Brown v. Hamilton Twp. Police Dep't Mercer Cnty., N.J.,* 547 F. App'x 96, 97 (3d Cir. 2013) (citing *McBride v. Deer,* 240 F.3d 1287, 1291 n. 3 (10th Cir.2001); *Freeman v. Arpaio,* 125 F.3d 732, 738 (9th Cir. 1997)); *Mugavero v. Town of Kearny,* No. 12–2439, 2013 WL 3930120, at *3 (D.N.J. July 30, 2013) ("[R]acially discriminatory statements, racial slurs, and racial epithets, on their own, fail to establish liability under section 1983.") (citations omitted); *see also Burgos v. Canino*, 358 F. App'x 302, 306 (3d Cir. 2009) (citing *Maclean v. Secor*, 876 F. Supp. 695, 699 (E.D. Pa. 1995)); *Burns v. Erie Cty. Prison*, No. 19-196, 2019 WL 5942739, at *3 (W.D. Pa. Sept. 3, 2019) (citing *Mears v. Kauffman*, 2018 WL 3585081, at *5 (M.D. Pa. July

---

[4]  Given Pulitano's alleged personal participation in the purported retaliation, Plaintiff's supervisory liability claim against Pulitano shall also proceed with respect to the retaliation allegations.

26, 2018); *Cash v. Dohman*, 2018 WL 1531681, at *2 (E.D. Pa. Mar. 29, 2018)) (noting verbal threats alone do not constitute adverse action and this is equally true of retaliatory disciplinary threats), *report and recommendation adopted by*, 2019 WL 5538137 (W.D. Pa. Oct. 25, 2019); *Kwanzaa v. Brown*, No. 05-5976, 2009 WL 4139393, at *14 (D.N.J. Nov. 17, 2009) ("[C]laims based on threats of disciplinary action, absent an accompanying allegation that the threats were carried out by Defendants, do not qualify as "adverse actions" for purposes of a retaliation claim.").

Any verbal threats or insults Plaintiff may have faced, assuming they occurred, would be unfortunate and intolerable. However, Plaintiff does not allege that Pulitano followed through on any of his threats to bring disciplinary charges against him and does not relate religious or ethnic insults to any substantive claim.

Accordingly, Plaintiff's equal protection claim against Pulitano is dismissed without prejudice for failure to state a claim.

iv.   Conspiracy

Plaintiff next alleges that Pulitano "conspired" with Cornelius by stating to Cornelius that Plaintiff was the "poster child" for filing grievances. This fails to state a claim of conspiracy under the facial plausibility standard of *Iqbal*. Furthermore, as indicated above, mere insults or name calling are insufficient to violate Plaintiff's constitutional rights, and do not render the speaker and listener conspirators.

v.   Medical Care

Finally, to the extent Plaintiff is asserting Pulitano was deliberately indifferent to his serious medical needs, his allegations lack facial plausibility and are conclusory. Here, as

elsewhere, facts are lacking. Accordingly, such a claim against Pulitano is dismissed without prejudice.

D.  Lieutenant Cornelius # 24

*1. Factual allegations*

Cornelius works at ECCF. (*See* DE 1 at 43). Cornelius purportedly failed to provide Plaintiff a fair opportunity to have his grievances heard because she did not interview Plaintiff. (*See id.* at 44). Cornelius also allegedly violated Plaintiff's "property interest" without due process when she failed to provide a fair opportunity to permit Plaintiff to be heard on whether particular items that had been taken from him were in fact "contraband." (*See id.* at 45). Plaintiff also claims that Cornelius, along with Pulitano, is liable because she threatened Plaintiff with false disciplinary charges to deter him from pursuing redress or administrative remedies.

*2. Discussion*

I interpret these allegations to suggest four possible claims against Cornelius: (1) failure to respond to grievances; (2) loss of property; (3) retaliation; and (4) conspiracy. None of these claims survives screening.

i.   Grievances

Plaintiff's objections to Cornelius's actions (or inactions) with respect to responding to his grievances fail to state a claim, for reasons like those discussed with respect to Cuevas and Dudley.

ii.   Loss of Property

Because Plaintiff has a post-deprivation state court remedy to proceed on his property interest claim, he fails to state a due process claim against Cornelius.

iii.     Retaliation

Plaintiff bases his retaliation claim against Cornelius because he threatened Plaintiff with false disciplinary charges. (*See* DE 1 at 45). As discussed with respect to Pulitano, such threats, without follow-up, do not sufficiently state an adverse action necessary to sustain a claim for retaliation. *See Kwannzaa v. Brown*, No. 05-5976, 2009 WL 4139393, at *14 (D.N.J. Nov. 17, 2009). Accordingly, Plaintiff's retaliation claim against Cornelius is dismissed without prejudice for failure to state a claim upon which relief may be granted.

iv.     Conspiracy

Plaintiff fails to state a conspiracy claim against Cornelius for the same reasons discussed in relation to Defendant Pulitano.

E.   Ann Sorrel

1. *Factual Allegations*

Ann Sorrel is a public defender. (*See* DE 1 at 46). She allegedly committed fraud, conspired to forge Plaintiff's signature on a "5A form," and/or suppressed or destroyed evidence. (*See id.*). Sorrel purportedly also committed misconduct by sharing confidential information with "Social Services" and the "Ombudsman's Office." Her actions were purportedly motivated by Plaintiff's nationality, his class, or his political views. (*See id.* at 47). Sorrel's actions allegedly created delays in Plaintiff's pending criminal case and affected his ability to access the courts and legal materials. (*See id.* at 47-48). Her actions also purportedly contributed detrimentally to Plaintiff's health. (*See id.* at 48). Plaintiff alleges that he was unable to get help from an outside specialist. (*See id.* at 49).

Plaintiff states that he advised Sorrel of these issues in writing. (*See id.* at 51). He also claims Sorrel is liable under a supervisory theory as an Assistant Deputy Public Defender. (*See*

*id.* at 54-55). According to Plaintiff, Sorrel created a policy, custom or practice under which "unconstitutional practices" occurred or could occur. (*See id.* at 55). Furthermore, she was negligent in supervising her subordinates who committed the wrongful acts. (*See id.*). Plaintiff then lists multiple dates in 2017 and 2018 when these "acts" occurred. (*See id.*).

Plaintiff states that Sorrel committed legal malpractice when she:

1. Forged the "5A form"

2. Continued to represent him without his consent

3. Pled for Plaintiff without his consent on June 1, 2018 and October 8, 2018

4. Allowed Plaintiff to remain at ECCF without a fair opportunity to be heard

5. Failed to communicate with Plaintiff

(*See id.* at 56-57).

Plaintiff next claims that Sorrel is liable under a racial or class-based discrimination theory. (*See id.* at 57-58). This allegedly deprived Plaintiff of a speedy trial. (*See id.* at 58). Plaintiff states Sorrel conspired with Martinez/Plaza, Cuevas, Dudley and Pulitano to deny him access to the courts and that this obstructionism was based on Plaintiff's nationality, religion and/or political views. (*See id.* at 58-59).

2. *Discussion*

i. Federal Claims

"Public defenders do not act under color of state law for purposes of § 1983 when they 'perform[ ] a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'" *Tompkins v. Hackett*, 841 F. App'x 367, 368 (3d Cir. 2021) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). Nevertheless, where a public defender conspires with the state to deprive an individual of his rights, the public defender is not immune from civil liability under § 1983.

*See Tower v. Glover*, 467 U.S. 914, 916-20 (1984) (finding public defender who allegedly conspired with judges and state attorney general to obtain criminal defendant's conviction was acting under color of state law). However, to plead conspiracy under § 1983, a plaintiff "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 185 (3d Cir. 2009). A bare allegation of an agreement is insufficient to sustain a conspiracy claim. *See Brown v. Deparlos*, 492 F. App'x 211, 215 (3d Cir. 2012).

Plaintiff does not present any facts to suggest a conspiracy by Sorrel besides conclusory, fact-free allegations that Sorrel conspired against him with some of the named Defendants. Such conclusory and unsupported allegations are insufficient to sustain a claim against Sorrel. *Accord Bayette v. Vanamburgh*, No. 19-13424, 2019 WL 6888408, at *4 (D.N.J. Dec. 17, 2019). Therefore, Plaintiff's federal claims against Sorrel are dismissed without prejudice.

### ii. State Law Claims

Plaintiff's remaining claims against Sorrel (such as legal malpractice) are brought pursuant to state law. A district court may raise the issue of improper joinder *sua sponte,* and I do so here. *See Chen v. Shan Qiao Zhang,* No. 10–6255, 2011 WL 612727, at *2 (E.D. Pa. Feb.10, 2011) (citing Fed. R. Civ. P. 21; *Schulman v. J.P. Morgan Inv. Mgmt., Inc.,* 35 F.3d 799, 804 (3d Cir.1994); *Braverman v. Kaskey, P.C. v. Toidze,* No. 09–3470, 2010 WL 4452390, at *2 (E.D. Pa. Nov.4, 2010)). Giving Plaintiff every benefit of the doubt, his legal malpractice claim and other state law claims against Sorrel are not properly joined to his claims related to events while Plaintiff was detained at ECCF.

Federal Rule of Civil Procedure 18(a) states that "[a] party asserting a claim ... may join, as independent or alternative claims, as many claims as it has against an opposing party." In a

multi-defendant case like this one, however, the propriety of joinder is most directly controlled by the Rule 20 limits on joinder of defendants. Federal Rule of Civil Procedure 20(a)(2) states:

> Persons ... may be joined in one action as defendants if:
> (A) Any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrences; and
> (B) Any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). *See also McDaniel v. Lanigan,* No. 12–3834, 2012 WL 5880371, at *3 (D.N.J. Nov.21, 2012) (claims by prisoners are not exempt from Rules 18 and 20) (citing *George v. Smith,* 507 F.3d 605, 607 (7th Cir.2007)). Rule 20's requirements are to be liberally construed in the interest of convenience and judicial economy. *See Paladino v. Newsome,* No. 12–2021, 2012 WL 3315571, at *5 (D.N.J. Aug.13, 2012) (citing *Swan v. Ray,* 293 F.3d 1252, 1253 (11th Cir.2002)). But this application, however liberal, "is not a license to join unrelated claims and defendants in one lawsuit." *Id.* (citing *Pruden v. SCI Camp Hill,* 252 F. App'x 436 (3d Cir.2007); *George,* 507 F.3d 605; *Coughlin v. Rogers,* 130 F.3d 1348 (9th Cir.1997)).

Typically, the Court might sever improperly joined claims. Here, however, there are no federal claims remaining against Sorrel; there is no diversity jurisdiction, as both Plaintiff and Sorrel reside in New Jersey; and the state law claims are not so related to the claims properly in federal court as to be considered part of the same case or controversy, *see* 28 U.S.C. § 1367(c). For these reasons, the state law claims against Sorrel are dismissed as well.

F. <u>Nurse Begonia Joseph</u>

1. *Factual Allegations*

Nurse Begonia Joseph of the Center for Family Guidance is employed at ECCF. (*See* DE 1 at 60). She purportedly caused excessive delays and unreasonably denied Plaintiff access to medical personnel despite his complaints of pneumonia, food poisoning, chest pain, and loss of

hearing. (*See id.* at 61). Joseph also purportedly stopped Plaintiff from receiving prescribed medication on several dates in 2018. (*See id.*).

Plaintiff alleges that Joseph received information from Plaintiff's cellmate on February 24, 2018, that Plaintiff was suffering from a bad case of food poisoning. (*See id.* at 61-62). Plaintiff's cellmate told Joseph that Plaintiff was very weak and was unable to get up to take his medication. (*See id.* at 62). Thereafter, however, Plaintiff was denied medical treatment "for a very long period of time." (*See id.*).

Plaintiff further alleges that Joseph attempted to have Plaintiff sign a form on March 4, 2018, to stop prescribed medicine. This, he alleges, was intended to deter Plaintiff from making complaints about Joseph's hostile attitude and behavior. (*See id.*).

2. *Discussion*

The allegation that, in February, 2018, Joseph failed to address Plaintiff's food poisoning "for a very long time" is at least factual in nature. A single bout of food poisoning is a common occurrence, however, and it may or may not require professional attention. There is no indication that this incident had any effect on Plaintiff's overall health. I cannot infer from these sparse allegations that Jones was deliberately indifferent to a serious medical need in a manner that rises to the level of a constitutional violation. *See, e.g.*, *Olrich v. Kenosha Cnty.*, No. 18-1980, 2021 WL 199346, at *1 (E.D. Wis. Jan. 20, 2021) (noting single incident of food poisoning did not constitute a serious medical need). Plaintiff's claims against Joseph are dismissed without prejudice for failure to state a claim.[5]

---

[5]  The allegation that Joseph attempted to stop Plaintiff from receiving medication by having him sign a form is vague, and indeed it does not appear that the alleged attempt succeeded. Nor does the complaint disclose the nature of the medication or permit the court to permit that denying it would implicate a serious medical need.

G. Santell Charles

i. *Factual Allegations*

Plaintiff alleges Santell Charles works at the Center for Family Guidance at ECCF and refused to take Plaintiff's sick call requests on May 7 and May 8, 2018, despite being informed that Plaintiff had a fever, chills, and a white infection spot on his throat, and that he was coughing up mucus. (*See* DE 1 at 63). According to Plaintiff, Charles told him she does not take sick calls. (*See id.*). Plaintiff argues Charles should have reported Plaintiff's condition to someone who could have provided medical care.

ii. *Discussion*

Charles is not alleged to be a medical practitioner and is not alleged to be responsible for taking sick calls. "A non-medical prison official is not charged with deliberate indifference for withholding adequate medical care from a prisoner being treated by medical personnel 'absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner.'" *Brown v. Mace-Liebson*, 779 F. App'x 136, 141 (3d Cir. 2019) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). It is not alleged that accepting sick calls was Charles's job. Absent additional allegations that might bring this case with the scope of *Brown, supra,* no claim is made out. The claim against Charles is dismissed.

H. Sergeant Slaide

i. *Factual Allegations*

Plaintiff states Sergeant Slaide works at ECCF. (*See* DE 1 at 64). Plaintiff sues Slaide as a supervisor. (*See id.*). According to Plaintiff, Slaide was made aware of medical violations through reports and/or personal interaction but failed to remedy the wrongs. (*See id.*).

Plaintiff further states from October 13 to November 17, 2015, Slaide knew of an excessive risk of harm to Plaintiff. She purportedly knew an inmate had a shank but failed to search this inmate and is therefore liable for an assault that occurred on November 17, 2015. (*See id.* at 65).

Plaintiff states Slaide is also liable as a supervisor for interfering or allowing interference with medical judgment. She was purportedly aware of Plaintiff's medical condition on May 8, 2018 (*see* section immediately preceding), because she talked to and observed Plaintiff, who was pale and coughing severely. (*See id.* at 66). She further had information Plaintiff had a fever, chills, and a white infection spot on his throat, and he felt like he had pneumonia. (*See id.*). Slaide replied with a hostile attitude and made her own medical determination in denying Plaintiff care that contributed to Plaintiff's condition. (*See id.*)

Plaintiff states that Slaide (along with Charles and Joseph) heard Plaintiff's statements regarding his physical condition, and observed that he was coughing and pale. (*See id.*). However, his requests to see a doctor were "overruled." (*See id.* at 67).

2. *Discussion*

Plaintiff's allegations appear to encompass a failure-to-protect and a medical care claim against Slaide. For the reasons described *infra*, only the medical care claim shall proceed.

    i.    Failure to Protect

To state a claim against a prison official for failure to protect, "the inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hamilton v. Leavy*, 117

F.3d 742, 746 (3d Cir. 1997)). "Deliberate indifference" is a subjective standard whereby "'the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.'" *Id.* (citing *Beers-Capitol v. Whetzel*, 256 F.3d 120,125 (3d Cir. 2001)).

> It is not sufficient that the official should have known of the risk. *[Beers Capitol*, 256 F.3d at] 133. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.*

*Bistrian*, 696 F.3d at 367.

Nevertheless, as previously stated *supra*, Section 1983 claims are subject to New Jersey's two-year statute of limitations. The failure-to-protect claim arises from an assault that allegedly occurred in November 2015. His claims necessarily accrued at that time, for Plaintiff undeniably knew or should have known of the injury upon which his failure to protect claims are based. Plaintiff did not file this action until April 2019, well beyond the limitation period. No basis for tolling of the limitation period appears. Accordingly, it is apparent from the complaint that Plaintiff's failure to protect claims are barred by the statute of limitations and must be dismissed. *See Ostuni v Wa Wa's Mart*, 532 F. App'x 110, 111-12 (3d Cir. 2013) ("Although the running of the statute of limitations is ordinarily an affirmative defense, where the defense is obvious from the face of the complaint and no development of the record is necessary, a court may dismiss a time-barred complaint *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.") (citing *Fogle v. Peirson*, 435 F.3d 1252, 1258 (10th Cir. 2006)); *Hunterson v. Disabato*, 244 F. App'x 455, 457 (3d Cir. 2007) ("A district court may *sua sponte* dismiss a claim as time-

barred under 28 U.S.C. § 1915A(b)(l) where it is apparent from the complaint that the applicable limitations period has run."). The failure to protect claim is dismissed.[6]

> ii.      Deliberate Indifference to Serious Medical Needs

Plaintiff adequately alleges that Slaide had relevant supervisory authority, knew of his medical condition, and failed to act appropriately. The Court will permit Plaintiff's claim of deliberate indifference to his serious medical needs to proceed against Slaide.

I.   <u>Officer Mellito</u>

i.   *Factual Allegations*

Mellito is a corrections officer at ECCF. (*See* DE 1 at 68). According to Plaintiff, Mellito failed to keep Plaintiff safe from October 13, 2015 to November, 2015. (*See id.*). Mellito was allegedly aware of Plaintiff's serious medical needs and fear for his safety because Plaintiff told him he was aware from other inmates that another inmate had a weapon/shank. (*See id.* at 68-69). That same month, Plaintiff was assaulted by another prisoner. (*See id.*).

ii. *Discussion*

Plaintiff's failure-to-protect claim against Mellito is time-barred for the same reasons stated with respect to Slaide. Accordingly, this claim is dismissed.

J.   <u>Sergeant Crawford</u>

i.   *Factual Allegations*

Defendant Crawford also works at ECCF. (*See* DE 1 at 70). He is purportedly liable as a supervisor. (*See id.*). Plaintiff alleges that he spoke to Crawford on November 17, 2015, but that

---

[6]   To the extent Plaintiff is asserting supervisory liability claims arising from his failure-to-protect allegations, they, too, would be barred by the applicable two-year statute of limitations. *See Sanford-El v. Cannon*, No. 19-8776, 2020 WL 4745996, at *6 (D.N.J. Aug. 17, 2020) (noting supervisory liability claim under Section 1983 also has a two-year statute of limitations).

Crawford failed to act to protect Plaintiff from danger as he had been threatened from gang members who stole items. (*See id.*). Plaintiff states Crawford is also liable for mental and emotional stress caused by scars formed on Plaintiff's face because of the assault that soon thereafter occurred. (*See id.* at 70-71). Crawford purportedly also did not immediately get Plaintiff medical attention, but instead put handcuffs on him after the assault. (*See id.* at 71).

ii. *Discussion*

Plaintiff's failure-to-protect claim against Crawford is parallel to that against Slaide and is likewise time-barred. It will be dismissed. Furthermore, to the extent Plaintiff's allegations against Crawford could be interpreted as including deliberate indifference to a serious medical need, it is also time-barred.

K.  Officer Cassidy

i.  *Factual Allegations*

Defendant Cassidy is also employed at ECCF. (*See id.* at 72). On October 19, 2017, Plaintiff alleges Cassidy failed to provide him medical attention for a dislocated shoulder. (*See id.*). Cassidy also failed to provide him with an "intake questionnaire," which facilitated the deprivation of certain personal property. (*See id.*). Plaintiff states that Cassidy is also responsible for acquiescing in the constitutional violations perpetrated by his subordinates, Da Byrd and Lewis. (*See id.* at 73).

ii. *Discussion*

Plaintiff brings three distinct federal claims against Cassidy; (1) deliberate indifference to Plaintiff's serious medical needs; (2) loss of property; and (3) supervisory liability. All three must be dismissed.

Plaintiff fails to state a deliberate indifference claim against Cassidy. First, in contrast to the allegations against Da Byrd and Lewis, *see infra,* Plaintiff fails to sufficiently allege that Cassidy had personal involvement. The complaint asserts no plausible factual basis to conclude that Cassidy had or should have had knowledge of Plaintiff's dislocated shoulder. Plaintiff cannot state a due process claim against Cassidy for the alleged loss of his property, as he possesses a sufficient post-deprivation state court remedy. Finally, Plaintiff fails to state supervisory liability against Cassidy because he does not allege knowledge of the activities of Da Byrd and Lewis, nor does he allege factually the existence of a relevant custom, policy or practice for which Cassidy was responsible. Thus, Plaintiff's federal claims against Cassidy are dismissed without prejudice.

L. <u>Da Byrd  & R. Lewis</u>

   i.   *Factual Allegations*

Defendant Da Byrd works in "transportation" at ECCF. (*See* DE 1 at 73-74). In October 2017, Plaintiff was being transported in a van. Da Byrd allegedly was sitting in the front of the van when he heard Plaintiff cry out in pain after being slammed against the back wall of the van. (*See id.* at 74). Plaintiff was not provided a seat belt during this transport. (*See id.* at 74). Plaintiff states he was not treated for a resulting dislocated shoulder or provided with an intake questionnaire with respect to his allegations against Da Byrd. Plaintiff states that Da Byrd is also liable for the actions of her subordinates, Lewis and Cassidy. (*See id.* at 75).

Plaintiff's allegations against R. Lewis are virtually identical to his allegations against Da Byrd. (*See id.* at 76-78).

ii. *Discussion*

A dislocated shoulder, assuming that occurred, could give rise to a serious medical need. *See Petrichko v. Kurtz*, 117 F. Supp. 2d 467, 470-71 (E.D. Pa. Oct. 4, 2000). The facts as alleged plausibly suggest that Plaintiff was in the sole custody of Da Byrd and Lewis, who would naturally have become aware of Plaintiff's distress. At this screening stage, I will allow Plaintiff's deliberate indifference claims against Defendants Da Byrd and Lewis to proceed.

M. Sergeant Novak

i.   *Factual Allegations*

Sergeant Novak works at ECCF and purportedly became aware of Plaintiff's medical condition regarding a dislocated shoulder after having a personal conversation with Plaintiff on October 19, 2017. (*See* DE 1 at 78-79). Plaintiff alleges that Novak denied him urgent medical attention. (*See id.* at 78).

Plaintiff also alleges that he was placed on suicide watch, despite not being suicidal. (*See id.* at 79). That decision, he says, should have been made by a mental health professional, which Novak is not. (*See id.* at 80). Plaintiff states ECCF has a custom, policy or practice of maintaining a medical staff that is untrained and inadequate. (*See id.*). Novak purportedly had knowledge of this custom, policy or practice, but did not nothing to remedy this situation. (*See id.* at 80-81). Plaintiff was allegedly "stripped naked, with no mattress, no hygiene products, no toilet paper in a feces covered cell." (*See id.* at 81).

Novak was also "fully aware" of the deprivation of Plaintiff's irreplaceable property after having a conversation with Plaintiff on October 19, 2017. (*See id.* at 81). Novak purportedly failed to take inventory of Plaintiff's property and Plaintiff ultimately suffered "permanent pain from infringement of his property rights." (*See id.* at 82).

Plaintiff claims that Novak injured him by: (1) denying court access; (2) depriving Plaintiff of his property; (3) depriving Plaintiff of urgent medical care; (4) and depriving Plaintiff of due process rights when he was placed on suicide watch. (*See id.* at 83).

ii. *Discussion*

    a.  Court Access

Plaintiff fails to state an access-to-courts claim against Novak. As with Plaintiff's similar claims against other Defendants, he fails to plead an underlying legal claim that he was prevented from bringing. Accordingly, this claim is dismissed without prejudice.

    b.  Property

Plaintiff has an adequate post-deprivation remedy for any loss of his property pursuant to the New Jersey Tort Claims Act, as previously explained. Thus, he fails to state a constitutional claim.

    c.  Medical Care

This Court will permit the claim of deliberate indifference to serious medical needs to proceed against Novak.

    d.  Suicide Watch

Plaintiff's allegations concerning "suicide watch" appear to suggest both a conditions-of-confinement claim and a due process claim.

When pretrial detainees complain about the conditions of their confinement, courts are to consider, in accordance with the Fourteenth Amendment, whether the conditions "amount to punishment prior to an adjudication of guilt in accordance with law." *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005). Courts must inquire as to whether the conditions "'cause [detainees] to endure [such] genuine privations and hardship over an extended period of time,

that the adverse conditions become excessive in relation to the purposes assigned to them.'" *Id.* at 159-60 (citations omitted).

The objective component of this unconstitutional punishment analysis examines whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell*, 441 U.S. at 538-39, n.20). Regarding the objective prong, however, "the Constitution does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 347.

Unsanitary conditions, if sufficiently prolonged or severe, may support a conditions-of-confinement claim. In this case, however, Plaintiff gives no indication of how long he endured the alleged unsanitary conditions. Furthermore, and perhaps more importantly, the complaint lacks plausible factual allegations of Novak's knowledge of these conditions.

Plaintiff fails to state a due process claim against Novak regarding his placement on suicide watch. Prison authorities must be given a certain amount of latitude in this area; indeed, they are in a double bind, in that the *failure* to place a prisoner on suicide watch may result in liability. A panel of the Third Circuit has indicated that placement on suicide watch for six days does not amount to punishment prior to the adjudication of guilt. *See Piskanin v. Hammer*, 269 F. App'x 159, 162 (3d Cir. 2008). As indicated above, Plaintiff's complaint fails to allege for how long he was placed on suicide watch. Plaintiff's claims against Novak are dismissed without prejudice for failure to state a claim upon which relief may be granted.

N.  Paula Sanders

i.  *Factual Allegations*

Paula Sanders is an employee of the Center of Family Guidance at ECCF. Plaintiff sues her under a supervisory liability theory. (DE 1 at 84). Plaintiff states that Sanders  oversees

responding to medical grievances. (*See id.* at 85). According to Plaintiff, when issues were presented to her,  Sanders responded in a hostile manner toward Plaintiff's medical concerns and with reckless disregard to Plaintiff's health. (*See id.*).

ii. *Discussion*

Plaintiff does not state his allegations with the required facial plausibility. Standing alone, the allegations against Sanders for deliberate indifference to Plaintiff's serious medical needs are no more than conclusory. Merely taking a hostile tone is not actionable. Additionally, as previously noted, failure to respond to grievances in and of itself does not state a federal constitutional violation. Plaintiff's claims against Sanders are dismissed without prejudice for failure to state a claim upon which relief may be granted.

O. <u>Sved Rizvi</u>

i. *Factual Allegations*

Sved Rizvi is the head doctor at ECCF's infirmary. (*See* DE 1 at 86). Plaintiff alleges unreasonable delays or denial of adequate medical treatment in 2015 and 2018. (*See id.*). Plaintiff states he spoke to Rizvi personally about all his medical needs on specific dates, but that the unit to which Rizvi transferred Plaintiff was unable to provide the required treatment. (*See id.* at 87). Plaintiff further states that Rizvi knowingly transferred Plaintiff, who has serious cardiac issues and a seizure disorder, to a unit that lacked close observation. He also placed Plaintiff in a room where he had to be on the top bunk. (*See id.* at 87-88). Plaintiff ultimately slipped and fell off the top bunk, which caused permanent damage to his knee. (*See id.* at 88).

ii. *Discussion*

Plaintiff's allegations against Rizvi fail to state a deliberate indifference claim. First, to the extent Plaintiff complains about Rizvi's purported lack of action in 2015, such incidents

would be barred by the applicable two-year statute of limitations.

Next, Plaintiff states he also spoke to Rizvi about all his medical needs not only in 2015 but also in 2017, yet he was transferred to a unit where he was not subject to close observation and was required to sleep on the top bunk. Plaintiff states that he slipped off the top bunk and injured his knee. Plaintiff gives no facts to support his claim that his assignment to a top bunk was medically contraindicated. More importantly, he fails to allege that Rizvi knew of any such contraindication, that he was deliberately indifferent in transferring Plaintiff to this unit, or that he knew to which bunk Plaintiff would be assigned. Accordingly, all of Plaintiff's deliberate indifference claims against Rizvi are also dismissed without prejudice for failure to state a claim upon which relief may be granted.

P. Paul O'Connor

i. *Factual Allegations*

Plaintiff states that Defendant O'Connor is an "orthopedic" employed at ECCF. (*See* DE 1 at 88). He sues O'Connor for purportedly providing ineffective treatment or denying medical care on various dates in 2015, 2017 and 2018. (*See id.*). First, Plaintiff states O'Connor only provided a bandage for his injured knee on June 17, 2015, which was inadequate. (*See id.* at 89). Furthermore, Plaintiff states that O'Connor did not provide any medical treatment for injuries Plaintiff suffered from an assault on November 17, 2015. O'Connor allegedly refused to provide any medical treatment, including an X-ray, for Plaintiff's dislocated shoulder on October 19, 2017. After the van incident on October 19, 2017, O'Connor failed to physically examine Plaintiff, and as a result failed to diagnose a dislocated shoulder and sent him back to his unit on November 8, 2017. (*See id.* at 90). On November 5, 2018, O'Connor purportedly told Plaintiff he

was not going to waste $1000 on an MRI for Plaintiff, even though, according to Plaintiff, his symptoms called for it. (*See id.* at 89).

Plaintiff states that O'Connor (along with Rizvi) should have referred Plaintiff to a specialist but failed to do so. (*See id.* at 91).

ii. *Discussion*

Plaintiff's medical care claims against O'Connor relate to separate, discrete instances.

Plaintiff's claims against O'Connor related to the 2015 incidents are time-barred on their face.

With respect to Plaintiff's claims related to his separated shoulder in 2017, Plaintiff alleges that O'Connor failed to physically examine his dislocated shoulder. This Court has permitted Plaintiff's claims against certain individuals, like Da Byrd and Lewis, who allegedly heard Plaintiff wail in pain during his transport and were contemporaneously aware of his injuries. The complaint fails, however, to allege the manner in which O'Connor was called upon (if at all) to examine Plaintiff. Without such allegations, a deliberate indifference claim lacks factual plausibility.

The complaint's allegations regarding failure to refer Plaintiff to a specialist or provide an MRI also fail to state a constitutional claim. Disagreements about appropriate modes of treatment, or failure to give plaintiff the specific treatment requested do not state a claim. *See White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990). Rather, Plaintiff needs to allege (1) reasonable requests for medical treatment, (2) that O'Connor had knowledge of the need for medical care accompanied by O'Connor's intentional refusal to provide it, (3) necessary medical treatment was delayed by O'Connor for non-medical reasons, or (4) O'Connor prevented Plaintiff from receiving recommended treatment for serious medical needs. *See Pearson v.*

*Prison Health Serv.,* 850 F.3d 526, 538 (3d Cir. 2017). The complaint as alleged fails to allege such facts. For example, Plaintiff failed to show that an MRI was called for (such as being ordered by another doctor or being medically necessary), but that O'Connor denied it for non-medical reasons. O'Connor's statement that he was not going to waste money on this procedure does not in and of itself make out the necessary showing that the procedure was necessary or recommended; an unnecessary MRI, for example, is indeed a waste of money, though the refusal could have been more polite. Plaintiff's opinion that his symptoms called for an MRI amounts to a disagreement regarding diagnoses or modes of treatment, which is insufficient in and of itself to state a deliberate indifference claim. *See Hairston v. Director Bureau of Prisons*, 563 F. App'x. 893. 895 (3d Cir. 2014); *White*, 897 F.2d at 110; *Andrews v. Camden Cty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000). Furthermore, while Plaintiff alludes to O'Connor's denial of treatment that was once prescribed, the allegation is conclusory and lacks sufficient factual detail to state a claim against O'Connor with any facial plausibility. Accordingly, Plaintiff's claims against O'Connor are dismissed without prejudice for failure to state a claim upon which relief may be granted.

Q.  <u>Saladin Abdunafi</u>

    i.  *Factual Allegations*

Defendant Abdunafi, who works at ECCF, allegedly caused injury to Plaintiff on October 19, 2017, May 25, 2018 and October 25, 2018, when he failed to provide adequate medical treatment in response to Plaintiff's serious medical needs. (*See* DE 1 at 92). According to Plaintiff, Abdunafi demonstrated a "hostile attitude" towards Plaintiff's needs. (*See id.*).

ii. *Discussion*

Plaintiff's allegations against Abdunafi are conclusory, containing few facts. They are dismissed without prejudice for failure to state a claim upon which relief may be granted.

R. <u>Meia Perkins</u>

i.   *Factual Allegations*

Plaintiff alleges that Perkins is responsible for scheduling appointments on medical referrals for ECCF inmates with special needs who require special transportation. (*See* DE 1 at 92). According to Plaintiff, Perkins delayed, postponed, concealed, or did not schedule medical trips for Plaintiff for post-surgical care, and delayed diagnostic referrals on specific dates listed in the complaint from 2015 and 2018. (*See id.* at 92-93).

ii. *Discussion*

Plaintiff's allegations against Perkins are conclusory and lack facts. Accordingly, Plaintiff's claims against Perkins are dismissed without prejudice.

S. <u>Lionel Anicette</u>

1. *Factual Allegations*

Lionel Anicette is the administrative director for the Center for Family Guidance and employed at ECCF. (*See* DE 1 at 93). Plaintiff sues Anicette based on a supervisory theory of liability because he failed to respond to Plaintiff's grievances, sick calls and complaints and/or failed to direct his subordinates to provide adequate treatment to Plaintiff. (*See id.*). Plaintiff states that Anicette cleared him medically and exposed him to a maximum security/gang unit which resulted in Plaintiff getting broken ribs, a broken nose and multiple stitches. (*See id.* at 94). According to Plaintiff, Anicette is personally liable because of the foreseeability of this

known risk. (*See id.* at 94-95). Anicette also failed to treat and/or refer Plaintiff to outside

specialists. (*See id.* at 95).

Plaintiff further alleges Anicette is liable because there is dysfunction in the medical

program at ECCF and he had the responsibility to train its medical employees. (*See id.* at 96-97).

Finally, Plaintiff alleges Rizvi, O'Connor, Abdunafi, Sanders, Perkins and Anicette

conspired to deny Plaintiff medical treatment in the following ways:

> arrange cancellation for chest surgery (left chest surgery), hearing
> loss in right ear, follow-up care with ENT for nose, urologist
> and/or urologist surgeon, and/or 'denied treatment that was once
> prescribed for physical therapy, bone spurs, heel spurs, daily blood
> pressure checks or heart device routine check up, post surgical
> care, bottom bunk pass and/or therapy for knee and back[.]

(*Id.* at 98).

ii. *Discussion*

    a.  Medical Care

Plaintiff's allegations against Anicette related to his purported deliberate indifference to

his medical care claims are conclusory and fail to state a claim. For example, Plaintiff alludes to

grievances he sent to Anicette, but does not indicate with any specificity what these grievances

entailed or why they would have necessitated a response from Anicette. Such a claim for

deliberate indifference against Anicette under an individual theory of liability is therefore

dismissed without prejudice.

    b.  Failure to Protect

Plaintiff's allegations related to a failure to protect fail for two reasons. First, Plaintiff

fails to allege with any facial plausibility that Anicette was deliberately indifferent to a

substantial risk to Plaintiff's health and safety. Furthermore, it appears as if Plaintiff is

attempting to bring this claim against Anicette for an assault that took place in 2015, or more

than two years after he filed this action in this Court. Thus, such a claim would presumably be time barred as well.

       c.   Conspiracy

Plaintiff also argues Anicette, along with Rizvi, O'Connor, Abdunafi, Sanders and Perkins conspired to deny him medical care. Such constitutional conspiracy allegations are conclusory and fail to state a claim that these Defendants entered into any sort of conspiratorial agreement.

       d.   Supervisory Liability

Plaintiff's claims for supervisory liability also fail to state a claim against Anicette because they are conclusory. Plaintiff fails to state with any facial plausibility Anicette either knew of Plaintiff's medical complaints and failed to act and/or that there was a pattern, practice or custom that Anicette was responsible for. Plaintiff alludes to purported "dysfunction" within the medical care staff at ECCF, but fails to allege with any facial plausibility any type of pattern, custom or policy for which Anicette was responsible for as supervisor that caused Plaintiff injury. Accordingly, Plaintiff's claims against Anicette are dismissed without prejudice.

  T.  <u>Les Paschall</u>

    i.   *Factual Allegations*

Paschall is the Chief Executive Officer for the Center for Family Guidance under contract with ECCF as the medical health care provider for ECCF. (*See* DE 1 at 98-99). Plaintiff alleges Paschall is responsible under a supervisory theory of liability for all employees that contributed to the pain and suffering from excessive delays in Plaintiff's care. (*See id.* at 99). He is also purportedly liable for the customs, policies or practices for all of his subordinate employees for their constitutional violations against Plaintiff. (*See id.*).

ii. *Discussion*

Plaintiff' fails to state with any facial plausibility a pattern, practice or custom and/or direct knowledge of any purported constitutional violations. Accordingly, Plaintiff's claims against Paschall are dismissed without prejudice.

U.   Alfaro Ortiz, Jr.

i.   *Factual Allegations*

Ortiz is the Head Director of ECCF. (*See* DE 1 at 99). As Head Director, he is purportedly responsible under a supervisory theory of liability for overseeing all medical services within the facility. He continued to allow employees to engage in conduct he knew would cause constitutional infliction of harm. (*See id.* at 100). Plaintiff states Ortiz had actual knowledge of the deficiencies in the medical care system and legal assistance programs from inadequate training and inadequate supervising. (*See id.* at 102).

Next, Plaintiff states Ortiz conspired to deny Plaintiff court access, provided unsanitary food and living conditions in retaliation for Plaintiff pursuing legal action. (*See id.* at 101). According to Plaintiff, this is based on a personal conversation Plaintiff had with Pulitano on February 12, 2018, to the effect that Ortiz was directing Dudley and Martinez/Plaza. (*See id.*)

Plaintiff further argues Ortiz violated his right to due process as Plaintiff has to determine if legal documents were properly drawn for him to receive the services of a notary on February 23, 2018. (*See id.* at 101-02).

Finally, Plaintiff alleges Ortiz caused harm to Plaintiff by exposing him to inhumane living conditions, unsanitary food service, deprivation of medically prescribed diet, expired food, expired hygiene supplies, unfit and insufficient drinking water, moldy showers, leaking ceilings,

clogged/dirty ventilation system. (*See id.* at 103). Ortiz is liable because, as a supervisor, he allegedly participated directly by allowing these customs, polices and/or practices to continue.

ii. *Discussion*

Plaintiff asserts supervisory liability claims against Ortiz relating to the lack of adequate medical care, obstruction of court access, and substandard conditions of his confinement. Plaintiff's allegations that Ortiz had knowledge of these purported circumstances are conclusory, as are his claims regarding a pattern, practice or custom. The allegation that Pulitano told him Ortiz was directing Martinez/Plaza and Dudley, appears to relate to the court access claim. However, as previously described, the supervisory liability claim fails for failure to state an underlying court access claim. Accordingly, Plaintiff's claims against Ortiz are dismissed without prejudice for failure to state a claim.

V. <u>Tiffany Wilson</u>

i. *Factual Allegations*

Plaintiff states that Tiffany Wilson is the kitchen manager at ECCF. (*See* DE 1 at 104). She is purportedly liable as a supervisor for failing to provide Plaintiff with a special diet for medical reasons. (*See id.* at 104, 105). Additionally, Plaintiff states he became ill from expired chicken on February 23, 2018. (*See id.*). Wilson is purportedly liable for this because Plaintiff had previously spoke to her about food issues, but she still failed to remedy the wrong and/or supervise her subordinates. (*See id.*).

ii. *Discussion*

Plaintiff fails to state with any facial plausibility that Wilson was deliberate indifference to his serious medical needs regarding a purported "special diet." He fails to state what this special diet entailed, how his diet given was insufficient, or even what knowledge Wilson had

about this special diet prescription. Furthermore, while food poisoning would obviously be unfortunate, it does not support a constitutional claim based on one incident, as previously noted. *See, e.g.*, *Olrich*, 2021 WL 199346, at *1. Accordingly, Plaintiff's claims against Wilson are dismissed without prejudice for failure to state a claim.

W. <u>Officer Bi Vona</u>

Plaintiff states that Bi Vona, who works at ECCF, forced Plaintiff to squat naked and lift his genitals after Plaintiff was properly patted down, despite lacking any reasonable suspicion that he possessed contraband. (*See* DE 1 at 106). Bi Vona also went to Plaintiff's cell and damaged or disposed of Plaintiff's legal materials. (*See id.* at 107). At that time, Bi Vona noticed the names of other officers. (*See id.* at 108). This action purportedly interfered with Plaintiff's access to the courts. (*See id.* at 107).

Plaintiff also states Bi Vona did not provide equal protection under the law when Plaintiff applied to use the law library and to access recreational time. (*See id.* at 108). Bi Vona purportedly made remarks about Plaintiff's nationality and ridiculed Plaintiff's name. (*See id.* at 108-09). Additionally, Plaintiff states he was the only individual that was strip searched without a rational basis, and that Bi Vona made discriminatory remarks while doing so. (*See id.* at 109.).

Finally, Plaintiff alleges that Bi Vona was retaliatory towards Plaintiff when he strip searched Plaintiff and rummaged through and destroyed Plaintiff's legal papers. (*See id.*)

ii. *Discussion*

This Court will permit Plaintiff's unreasonable search and seizure, equal protection and retaliation claims to proceed against Bi Vona related to the strip search. However, Plaintiff's equal protection/retaliation claim related to the law library and recreational time is dismissed without prejudice. All Plaintiff alleges with respect to these two incidents is that Bi Vona

evinced a hostile attitude and made remarks. Such allegations, in and of themselves are insufficient to state a constitutional violation.

X.  Sergeant Ferrara

    i.  *Factual Allegations*

Plaintiff alleges Sergeant Ferrara is liable as Bi Vona's supervisor. Plaintiff claims he told Ferrara on February 7, 2019 that all his "detainers" had been lifted. (*See* DE 1 at 110). Furthermore, Plaintiff states that Ferrara allowed Bi Vona to invade Plaintiff's rights which included Plaintiff being treated differently by being strip searched without reasonable suspicion and by allowing Bi Vona to retaliate against Plaintiff and engage in an intrusive inspection. (*See id.*). According to Plaintiff, Ferrara created a custom, practice or policy by his own actions and by failing to act on information indicating unconstitutional acts were occurring. (*See id.* at 111).

    ii. *Discussion*

Plaintiff fails to state a supervisory claim against Ferrera. He fails to state with facial plausibility Ferrera's engagement in Bi Vona's purported unconstitutional acts and/or with any facial plausibility that Ferrera created or was engaged in the creation of a custom, practice or policy that led to Bi Vona's action. Accordingly, Plaintiff's claims against Ferrera are dismissed without prejudice for failure to state a claim upon which relief may be granted.

Y.  Joseph DiVincenzo, Jr.

    i.  *Factual Allegations*

Joseph DiVincenzo, Jr. is the Chief Executive Officer ("CEO") of Essex County. (*See* DE 1 at 111). I take judicial notice that Mr. DiVincenzo has been Essex County Executive since 2003. Plaintiff sues him as a supervisor. (*See id.*). More specifically, Plaintiff states DiVincenzo,

Jr., as CEO, has the responsibility to ensure all employees at ECCF comply with federal and state law, but failed to do so. (*See id.* at 112).

    ii. *Discussion*

Plaintiff seeks to hold Mr. DiVincenzo liable by virtue of his political office. He fails to state supervisor liability claims against DiVincenzo, Jr. with any factual plausibility. Accordingly, his claims against this Defendant are dismissed for failure to state a claim upon which relief may be granted.

    Z.  <u>Charles Green</u>

    i.  *Factual Allegations*

Charles Green is ECCF's warden. (*See* DE 1 at 112). Plaintiff states that Green met with him on October 15, 2018 regarding Plaintiff's losing his legal representative position in unit 2B1 as a result of retaliation by Martinez/Plaza and Pulitano. (*See id.* at 113). Plaintiff states that Green was fully aware of Plaintiff's issues based upon the grievances Plaintiff filed. (*See id.*). Plaintiff states that he and Green further discussed the following:

1. Court access violations

2. Injuries Plaintiff suffered including: (a) falling off a top bunk on June 15, 2015; (b) getting cleared medically to a gang unit with a pacemaker/defibrillator while not being gang affiliated; (c) dislocating right shoulder on October 19, 2017; (d) broken ribs, broken nose, several stitches on November 17, 2015 from an assault

3. Follow ups with a surgeon being cancelled multiple times by Perkins

4. Getting placed on a top bunk

5. Plaintiff's heart issues

6. Not getting immediate treatment for pneumonia

(*See id.* at 113-14). Plaintiff states Green did nothing in response to his grievances and threatened to move Plaintiff to a different facility. (*See id.* at 114). Plaintiff states that shortly after his meeting with Green, multiple searches were conducted on Plaintiff's cell to harass him. (*See id.* at 115).

Plaintiff also complains about Green creating a policy of no legal phone calls which included not being able to contact the municipal court. Green was also purportedly responsible for permitting showers only every three days when ECCF went on lockdown, which caused Plaintiff to get an infection. (*See id.* at 116).

Finally, Plaintiff states Green had actual knowledge of the failed legal assistance program, inadequate access to the law library, deprivation of food, clothing, shelter, medical care, receiving expired toothpaste, expired food being served, inmates committing suicide and inmates being given the wrong medication. (*See id.* at 117-18).

ii. *Discussion*

This Court liberally construes the complaint against Green as raising the following claims:: (1) depriving Plaintiff access to courts; (2) failing to protect Plaintiff from a 2015 assault; (3) placing Plaintiff on a top bunk in 2015; (4) being deliberately indifferent to Plaintiff's serious medical needs; (5) First Amendment retaliation; and (6) depriving Plaintiff of constitutional conditions of confinement.

1.   Access to Courts

Plaintiff first attempts to bring an access to courts claim against Green. However, like Plaintiff's other access to courts claims previously discussed, *supra*, he fails to state with any facial plausibility any underlying meritorious claim he was preventing from bringing. Accordingly, Plaintiff's access to courts claim against Green is dismissed without prejudice.

### 2. Failure to Protect from 2015 Assault

Next, Plaintiff alludes to Green's purported failure to protect Plaintiff from a 2015 assault. As previously discussed, such a claim arising from the 2015 assault is time-barred. Therefore, this claim against Green is dismissed.

### 3. Placement on Top Bunk in 2015

Similarly, any claim arising from Plaintiff's placement on a top bunk in 2015 is also time-barred and is dismissed.

### 4. Deliberate Indifference to Plaintiff's Serious Medical Needs

Plaintiff also complains that Green was deliberately indifferent to his serious medical needs. By way of example, he alludes to complaining to Green about medical visits being cancelled and his separated shoulder. As previously noted, however, "[a] non-medical prison official is not charged with deliberate indifference for withholding adequate medical care from a prisoner being treated by medical personnel absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Brown*, 779 F. App'x at 141 (internal quotation marks and citation omitted). Without further details as to what specifically Plaintiff told Green regarding his treatment (or lack thereof) he was receiving from medical staff for his ailments and/or how medical personnel were actively mistreating Plaintiff, this Court finds Plaintiff has failed to state a deliberate indifference claim against Green.

Plaintiff's medical care claim against Green as a supervisor also fails to state a claim. Plaintiff fails to state facts suggesting that Green had personal involvement or a custom, policy or pattern that led to his injury. Accordingly, Plaintiff's claims against Green of deliberate indifference to Plaintiff's serious medical needs are dismissed without prejudice for failure to state a claim upon which relief may be granted.

5.   Retaliation

This Court will permit Plaintiff's retaliation claim against Green to proceed past screening. The complaint indicates that Green was aware of Plaintiff's constitutionally protected actions through his filing of grievances. Furthermore, Plaintiff has sufficiently alleged an adverse action by stating that shortly after meeting with Green to discuss his grievances, he was subject to excessive cell searches. *See Hernandez-Tirado v. Lowe*, No. 14-1897, 2017 WL 3433690, at *10 (M.D. Pa. Aug. 10, 2017) (cell searches may constitute adverse action if motivated by retaliatory motive). Given the alleged temporal proximity, at this screening stage, this claim will proceed against Green.

6.   Conditions of Confinement

With respect to conditions of confinement, Plaintiff fails to state with any facial plausibility Green's personal knowledge, aside from Green's order limiting showers. The order that detainees should only shower every three days does not state a condition of confinement claim against Green. *See Gonzalez v. Russell*, No. 20-4531, 2021 WL 1088318, at *8 (E.D. Pa. Mar. 22, 2021) (citations omitted). Furthermore, even though Plaintiff states this shower policy "caused" him to get an infection, he gives no indication of the infection itself or how or why it was caused by the shower policy. Rather, such an allegation, one of many self-diagnoses, is conclusory and therefore lacks the requisite facial plausibility required under *Iqbal*.

AA.   <u>Essex County</u>

i.   *Factual Allegations*

Plaintiff's allegations against Essex County appear to rest primarily on the fact that most of the Defendants named herein are employed at ECCF, and therefore are employees of Essex County.

ii. *Discussion*

It is well established that local government units cannot be held liable via *respondeat superior* for the constitutional violations of their employees "unless action pursuant to official municipal policy of some nature caused a constitutional tort" to be committed by such employees. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978). To plead a county liability claim, a plaintiff must allege that "a [county] government's policy or custom ... inflict[ed] the injury" in question. *Id.* at 694. "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (alteration in original) (internal quotation marks omitted). "Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990).

The Third Circuit has held that a *Monell* claim may also be premised on a municipality's failure to train, supervise, and discipline. To plead such a claim, a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting *Brown v. Muhlenberg Township*, 269 F.3d 205, 215 (3d Cir. 2001)). Deliberate indifference is plausibly pled by showing that "(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and

(3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* (quoting *Doe v. Luzerne County*, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted)). Finally, conclusory recitations of the elements of a *Monell* claim are insufficient. *See, e.g., Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 595 (D.N.J. 2013) (dismissing the claim against the city because the plaintiff failed to plead adequate facts demonstrating the existence of a policy or custom).

As detailed above, Plaintiff's pattern, practice or custom allegations are conclusory, not factual, and no failure to train is factually alleged. Accordingly, any possible *Monell* claim against Essex County is also insufficiently alleged. Plaintiff's claims against Essex County are dismissed for failure to state a claim.

BB.     <u>CFG Health Systems, LLC</u>

    i.   *Factual Allegations*

Plaintiff appears to base his allegations against CFG Health Systems, LLC on the fact that it is the employer of many of the medical personnel named as Defendants in this case. Thus, this Court presumes that Plaintiff is attempting to bring supervisory liability claims against CFG.

    ii. *Discussion*

Plaintiff fails to state with facial plausibility a pattern, practice or custom related to his medical care claims. Accordingly, his claims against CFG are dismissed without prejudice for failure to state a claim upon which relief may be granted.

CC.     <u>State Tort Claims</u>

    i.   *Factual Allegations*

Plaintiff concludes his complaint with assertions that several defendants are liable for "tort action." (DE 1 at 138). Plaintiff asserts that Martinez/Plaza, Slaide, Cassidy, Da Byrd, Lewis and Novak owed him a duty of care with respect to his property. (*See id.*). Plaintiff states that Abdunafi is liable because he did not see Plaintiff about his dislocated shoulder. (*See id.* at 139). Finally, Novak is liable for an unnamed state tort because he enforced a policy that placed Plaintiff on suicide watch, which caused him to be stripped naked and placed in a cell that had inhuman conditions as described above.

### ii. *Discussion*

The Court will permit Plaintiff's state law tort claim related to the deprivation of his property to proceed against Martinez/Plaza, Slaide, Cassidy, Da Byrd, Lewis and Novak.

Plaintiff's state tort claim against Abdunafi appears to be based on medical negligence. Under New Jersey law, to bring a negligence claim, a plaintiff must plead the following four elements: (1) duty of care, (2) breach, (3) proximate cause, and (4) actual damages. *Polzo v. Cty. of Essex*, 196 N.J. 569, 960 A.2d 375, 384 (2008). Plaintiff's claims as related to Abdunafi are conclusory and fail to state with any facial plausibility how Abdunafi breached his duty.

It is not entirely clear what tort Plaintiff is asserting against Novak in relation to his placement on suicide watch. This Court has already discussed why Plaintiff's due process claim based on these allegations is dismissed without prejudice for failure to state a claim upon which relief may be granted. For similar reasons, Plaintiff's state law tort claims shall not proceed against Novak related to his placement on suicide watch.

## IV.   CONCLUSION

For the foregoing reasons, only the following claims against the following Defendants shall proceed past screening:

(1) Martinez/Plaza – retaliation, state law tort for deprivation of property

(2) Pulitano – retaliation

(3) Slaide – deliberate indifference to Plaintiff's serious medical needs, state law tort for deprivation of property

(4) Da Byrd – deliberate indifference to Plaintiff's serious medical needs; state law tort for deprivation of property

(5) Lewis – deliberate indifference to Plaintiff's serious medical needs; state law tort for deprivation of property

(6) Novak – deliberate indifference to Plaintiff's serious medical needs; state law tort for deprivation of property

(7) Cassidy – state law tort for deprivation of property

(8) Bi Vona – unreasonable strip search, equal protection related to strip search and retaliation related to strip search

(9) Green – retaliation

All other claims are dismissed for the reasons described above. An appropriate order will be entered.

DATED:  August 6, 2021                         /s/ Kevin McNulty
                                               KEVIN MCNULTY
                                               United States District Judge